**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| ULTRAVISION TECHNOLOGIES, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:25-cv-874 |
| | § | |
| LEDVANCE GMBH, | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant. | § | |
| | § | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Ultravision Technologies, LLC ("Ultravision"), files this Complaint in this Eastern

District of Texas (the "Judicial District") against Defendant LEDVANCE GMBH ("Defendant") for

infringement of U.S. Patent No. 10,891,881 (the "'881 Patent"), U.S. Patent No. 9,685,102 (the

"'102 Patent"), U.S. Patent No. 9,589,488 (the "'488 Patent"), and U.S. Patent No. 9,659,511 (the

"'511 Patent") (collectively the "Patents-in-Suit") and alleges as follows:

**THE PARTIES**

1.      Ultravision is a limited liability company organized and existing under the laws of

the State of Delaware and is registered to do business in Texas. Ultravision has its principal place

of business at 4542 McEwen Road, Dallas, Texas 75244.

2.      Upon information and belief, Defendant LEDVANCE GMBH is a corporation

organized and existing under the laws of Germany, with its principal place of business located at

Parkring 1-5, 85748 Garching near Munich, Germany. LEDVANCE may be served with process

via its registered agents, including at least the registered agents of its subsidiaries such as the

registered agents of LEDVANCE LLC, including at least Corporate Creations Network Inc., 5444

Westheimer #1000, Houston, TX 77056, USA, and Corporate Creations Network Inc., 150 Royall

St. Suite #205, Canton, MA 02021, USA, and/or via LEDVANCE's corporate officers.

## JURISDICTION

3.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.* This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4.      This Court has personal jurisdiction over Defendant. Upon information and belief, Defendant regularly conducts business and has committed acts of patent infringement and/or has induced acts of patent infringement by others in this Judicial District and/or has contributed to patent infringement by others in this Judicial District, the State of Texas (including, for example, offering, selling, and shipping product into this Judicial District in Frisco, Texas), and elsewhere in the United States. The Court's exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice because Defendant has established minimum contacts with the forum with respect to both general and specific personal jurisdiction. As further alleged herein, at least by September 5, 2024, LEDVANCE had entered an agreement to remain the "exclusive licensee of the OSRAM brand for lamps in general lighting," and LEDVANCE's "license for the SYLVANIA trademark in the US and Canada remains in force." *AMS OSRAM AND LEDVANCE EXTEND GLOBAL BRAND PARTNERSHIP INTO THE NEXT DECADE,* LEDVANCE,                    https://www.ledvance.com/professional/company/newsroom/press-releases/2024/ams-osram-and-ledvance-extend-global-brand-partnership-into-the-next-decade-n334482 (last visited Aug. 12, 2025). On information and belief, LEDVANCE GMBH, via its own operations, employees, agents, and/or alter egos has a Sales Office, for example, for LEDVANCE Group's OSRAM and SYLVANIA brands and ams Sensors USA Inc. in Collin County at 5556 Tennyson Parkway, Plano, TX 75024, among other LEDVANCE Group locations owned, leased and/or operated in this Judicial District. *See, e.g., Sales offices & branches*, AMS OSRAM, https://ams-osram.com/about-us/locations-distribution/sales-offices-branches (last  visited  Aug.

12, 2025) (listing OSRAM "sales offices" in the "USA" including "ams Sensors USA Inc. / 5556 Tennyson Parkway / Plano, TX 75024 / USA."

5.      Upon information and belief, Defendant transacts substantial business in the State of Texas, including in this Judicial District. Defendant has committed acts of infringement in the State of Texas, by among other things, offering to sell and selling products that infringe at least one of the Patents-in-Suit, including the accused products as alleged herein, as well as providing service and support to their customers in the State of Texas.

6.      Upon information and belief, Defendant has made, used, offered for sale or sold products that infringe at least one of the Patents-in-Suit, said products including, for example, LED lighting, area lights and/or street lamps (the "Accused Products"), to customers in Texas, or imported Accused Products into the United States to Texas. Upon information and belief, Defendant, directly or indirectly, participates in the stream of commerce that results in products, including the Accused Products, being made, used, offered for sale, and/or sold in the State of Texas and/or imported into the United States to the State of Texas, including in this Judicial District.[1]

7.      LEDVANCE GMBH performs and/or directs and controls global activities (e.g., importation, distribution, sales, offering for sale, use, research and development, manufacturing and sustainability) of its subsidiaries (e.g., LEDVANCE LLC) and brands, including the LEDVANCE and SYLVANIA brands (collectively, "LEDVANCE Group"). For example, LEDVANCE operates and maintains research and development, manufacturing, and/or

---

[1] *See, e.g.*, *LEDVANCE TOUCHDOWN.21: URBAN OUTDOOR: STREET LIGHTING*, LEDVANCE, https://www.youtube.com/watch?v=mhoaJztvBw4 (discussing the Streetlight Flex, one of the Accused Products, stating: "[N]ow we're really happy to have the first LED vents luminaire that is purpose built for street lighting and parking, our new product Streetlight Flex, and when we were creating, now, Streetlight Flex, we of course wanted to make sure that from the beginning it is a very future-proof robust and of course flexible solution. That is why, like with any of our product families, we have made sure that from the start the amount of choice you have within the product family is just right.").

distribution channels specifically designed for the U.S. market, including at least certifying its products with the Federal Communications Commission (FCC) and registering and licensing U.S. trademarks, e.g. U.S. Registration Serial Nos. 77953888, 79217468, 79224668, 79207334, and 79197376, for use by its U.S. subsidiaries. *See Contact LEDVANCE - the makers of SYLVANIA General Lighting*, LEDVANCE, https://www.ledvanceus.com/about/Pages/contact-us.aspx (last visited Aug. 12, 2025) (listing contact information for its U.S. operations).  When renewing its U.S. trademark for LEDVANCE, LEDVANCE GMBH indicated that "the mark is in use in commerce" in the U.S. "on or in connection with" goods specified as "Electric lamps; LED lighting fixtures for indoor and outdoor lighting applications." *See, e.g.*, *Combined Declaration of Use and/or Excusable Nonuse/Application for Renewal of Registration of a Mark under Sections 8 & 9*, USPTO, https://tsdr.uspto.gov/documentviewer?caseId=sn77953888&docId=S8920220301173208&linkId=3#docIndex=2&page=1 (last visited Aug. 12, 2025). LEDVANCE GMBH also directs and controls the infringing activities of LEDVANCE Group in the United States (e.g., via importation, distribution, sales, offering for sale, use, research and development, manufacturing and sustainability), including infringing activities committed in the state of Texas and this Judicial District          in          connection          with          the Accused Products, for example, LEDVANCE Group's products, as alleged herein.

8.    LEDVANCE GMBH's 2023 Sustainability report indicates that LEDVANCE carries out the groups' "central administrative functions," which on information and belief includes administrative functions or the United States, at its "headquarters in Garching near Munich, in Germany" and innovation and design activities, which on information and belief includes innovation and design activities for the United States, "are steered from" the "Global Innovation & Strategy Center in Germany and complemented by" facilities in the United States and China. In addition to "China-based [innovation and design] business activities," LEDVANCE indicates that "other operational functions," including "significant elements of purchasing, logistics and

4

packaging management, which on information and belief includes operational functions related to operations in the United States, are also currently bundled at the Chinese LEDVANCE site in Shenzhen, giving them the advantage of being geographically close to the relevant procurement markets." *Sustainability Report 2023*, LEDVANCE GMBH, 8, available at https://www.ledvance.com/10_LEDVANCE_only/asset-13230089_ledvance_sustainability_ report_2023.pdf (last visited Oct. 11, 2204).



*Id.* at 1 (emphasis added).



*Id.* at 78 (emphasis added).

**TRADITION MEETS INNOVATION**

The name LEDVANCE refers to the LEDVANCE GmbH and its affiliated companies and subsidiaries. They are all covered by the policies and actions described in this Sustainability Report, however, in terms of the respective figures, with sometimes limited scope of coverage. Due to the unstable conditions in Russia and Ukraine, these regions are generally not represented. Moreover, the report also encompasses LEDVANCE's full value chain, including all upstream and downstream activities, impacts, risks and opportunities. We aim to increase the depth of that information over the coming years.

Having emerged from the general lighting business of OSRAM, LEDVANCE is now part of the Chinese group MLS Co Ltd, which is one of the world's largest producers of LED packages and indirectly holds 100% of the shares in LEDVANCE. LEDVANCE constitutes a subgroup within the MLS Group. Through this partnership, along with LEDVANCE's rich history, we combine our traditional general illumination expertise with modern, groundbreaking lighting technologies.

The LEDVANCE Group comprises LEDVANCE GmbH, based in Garching, Germany, as the parent company and, as of 31 December 2023, holds direct or indirect equity interests in 55 subsidiaries (December 31, 2022: 55), associated companies/joint ventures and other investments.

As of December 31, 2023, the LEDVANCE Group had 2,718 employees (HC, Headcount), which corresponds to a decrease of 484 HC compared to December 31, 2022 (3,202 HC). This decrease can be explained by the sale of the production site in Smolensk, Russia, which, despite us hiring new employees, still resulted in an overall reduction in employee numbers.

*Id.* at 7 (emphasis added).

## REDEFINING THE ROLE OF LIGHT IN A CONNECTED WORLD

LEDVANCE is a global company with business relations in about 130 countries and sales offices in over 50 countries. As of 2023, we generated the majority (43.4 percent) of our revenue in the Western European region, 31.5 percent in Emerging Markets and 23.3 percent in the US and Canada. Our existing traditional product business will be supplemented by an increase in project business in the future.

Our central administrative functions are carried out at our headquarters in Garching near Munich, in Germany. Our innovation and design activities are steered from our Global Innovation & Strategy Center in Germany and complemented by our Smart Home Innovation Center in the US, along with our Global Innovation & Execution Center in China. In addition to the above China-based business activities, other operational functions (China Operations Regional Excellence/C.O.R.E.) such as significant elements of purchasing, logistics and packaging management are also currently bundled at the Chinese LEDVANCE site in Shenzhen, giving them the advantage of being geographically close to the relevant procurement markets.

*Id.* at 8 (emphasis added).

9.      One of the central roles played by LEDVANCE GMBH is mandating company-wide sustainability goals that impact every project, including those in the United States.

> At LEDVANCE, we aim to manage our products effectively across their entire product life cycle. Since the 'use' phase has the largest impact on the environment, our R&D teams are working on several projects focusing on reducing the impact of this phase. No matter what the project, we apply a two-fold approach: our own R&D and working towards better standardization with partners such as LightingEurope, ZVEI or Zhaga.

*Id.* at 32 (emphasis added).

10.     Given that LEDVANCE has outsourced all manufacturing since 2022, other business activities performed by or under the direction and control of LEDVANCE GMBH, such as R&D activities and/or supply chain management, which on information and belief includes R&D activities and/or supply chain management for the United States, are a "focus" of LEDVANCE's global business:

> The second hotspot is in manufacturing. All production at LEDVANCE was outsourced in 2022, which is why we are focusing on developing our supply chain management.

*Id.*

11.     The role of LEDVANCE GMBH in performing and/or directing and controlling LEDVANCE's global business activities is evident in the context of LEDVANCE's "GLOBAL SUSTAINABILITY GOVERNANCE STRUCTURE," where LEDVANCE GMBH's Chief Operating Officer is Head of Compliance and Sustainability for LEDVANCE's global business, including operations in the United States.



*Id.* at 12.

12.    LEDVANCE GMBH performs and/or directs and controls LEDVANCE's global business activities related to sustainability.

## SUSTAINABILITY GOVERNANCE STRUCTURE

Advancing lighting to provide sustainable solutions for the productivity, health and well-being of people everywhere – while acting responsibly towards our customers, employees, business partners, society and the environment – is only possible with effective and efficient governance and management systems in place. This starts by addressing sustainability with a dedicated corporate governance structure, which is why we implemented a new global function, Head of Compliance & Sustainability, at the start of 2022 and began to build up a global Sustainability team.

> To be able to consistently pursue our Sustainability Strategy and the demands derived from it, clear roles and responsibilities have been created within the company. The overriding responsibility for sustainable, ethical action is borne by our management, which makes key directional decisions and lays down core principles applicable throughout the company. The responsible managers prepare the content of these decisions and control their implementation.

*Id.*

> Day-to-day leadership and oversight rest with the global Sustainability department. This team coordinates activities, sets priorities and leads LEDVANCE's company-wide efforts to promote sustainability throughout the company. Responsibility for implementation then rests with the functional departments to ensure that sustainability measures are successfully executed.

*Id.* at 13.

> As the graph on the previous page shows, on the LEDVANCE Management Committee level, sustainability is within the responsibility of our Chief Operations Officer (COO). Our Head of Compliance & Sustainability is responsible for the governance of our global sustainability program, driving its implementation and improvements, giving advice and guidance to our Sustainability Experts and Ambassadors, and providing updates and recommendations to the Sustainability Steering Committee.

> The Sustainability Steering Committee, which consists of the members of the LEDVANCE Management Committee, is responsible for the company's overall Sustainability Strategy as well as evaluating its implementation status. A team of Global Sustainability Experts from the central functions, as well as regional and national-level Sustainability Ambassadors, report on a functional level to the Head of Compliance & Sustainability. The Global Sustainability Experts perform sustainability tasks according to allocated responsibilities on a global level, delivering content and KPIs for global topics, while the Sustainability Ambassadors act as local points of contact for sustainability-related topics.

*Id.*

13.     Additionally, the LEDVANCE GMBH board member and CFO responsible for writing at least a portion of LEDVANCE GMBH's 2023 Sustainability Report, Jue Wang, also has a role as "Executive Senior Vice President" for LEDVANCE's global business, in which role she "oversee[s] the Region Managing Directors, who [] report directly to her" in an effort to "enhance operational efficiency and drive the company forward."

> Jue Wang joined the company in December 2020 in the role of CFO and as a board member. In her capacity as Executive Senior Vice President, she will now oversee the Region Managing Directors, who will report directly to her. This strategic realignment is designed to enhance operational efficiency and drive the company forward.

*LEDVANCE      ANNOUNCES      KEY      LEADERSHIP      CHANGES*, LEDVANCE, https://www.ledvance.com/professional/company/newsroom/press-releases/2023/ledvance-announces-key-leadership-changes-n283260 (Oct. 6, 2023) (last visited Oct. 11, 2024). Accordingly, an officer of LEDVANCE GMBH directs and controls at least some of the activities of the LEDVANCE Group for the region that includes the United States.

**DEAR READERS,**

***

LEDVANCE is currently undergoing an ambitious development process to meet the requirements of new regulatory directives. From 2025 on, we will be subject to the provisions of the Corporate Sustainability Reporting Directive (CSRD), and this report represents our first step towards complying with these new standards.

As the Executive Senior Vice President at LEDVANCE, I'm particularly proud that all our actions are a testament to our ingrained belief that sustainability is not a destination but a continuous journey. It's about more than just being environmentally conscious – it's about comprehensively reshaping our practices from top to bottom.

We hope that this report assures you of our commitment to do even better today than we did yesterday. Whether as a company or individual, we all have a duty to reinforce our efforts to build a brighter and more sustainable future for all of humanity.

**JUE WANG**
EXECUTIVE SENIOR VICE PRESIDENT

11

*Id.* at 3.

14.     LEDVANCE's own statements regarding its R&D, supply chain management, and company-wide sustainability efforts indicate that the German parent company LEDVANCE GMBH, directs and controls the activities of its subsidiaries in the U.S., Texas, and this Judicial District. For example, Defendant directs and controls its subsidiary LEDVANCE LLC, which is a Delaware limited liability company that has been registered to do business in Texas since 2016. Upon information and belief, LEDVANCE LLC has committed acts in connection with the infringement of the Accused Products. For example, LEDVANCE LLC is a contact for LEDVANCE's U.S. online sales according to the "Terms of Use" document for LEDVANCE's U.S. online store, which: (1) indicates that "This website is operated by shop.ledvanceus.com," (2) lists "LEDVANCE LLC" under the heading "Contact Information," and (3) is included on a webpage listing a 2025 copyright claim by LEDVANCE GMBH. *See Terms of Use*, LEDVANCE GMBH, https://shop.ledvanceus.com/terms-of-use/ (last visited Aug. 12, 2025). As further alleged herein, at least by September 5, 2024, LEDVANCE had entered an agreement to remain the "exclusive licensee of the OSRAM brand for lamps in general lighting," and LEDVANCE's "license for the SYLVANIA trademark in the US and Canada remains in force." *AMS OSRAM AND LEDVANCE EXTEND GLOBAL BRAND PARTNERSHIP INTO THE NEXT DECADE*, LEDVANCE,                https://www.ledvance.com/professional/company/newsroom/press-releases/2024/ams-osram-and-ledvance-extend-global-brand-partnership-into-the-next-decade-n334482 (last visited Aug. 12, 2025).

15.     In the alternative, this Court has personal jurisdiction over LEDVANCE GMBH under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law, LEDVANCE GMBH is not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over LEDVANCE GMBH is consistent with the U.S. Constitution.

16.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 because, among other things, Defendant is a foreign defendant and not a resident in the United States, and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

17.    Accordingly, Defendant is subject to this Court's jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to its substantial business in the State of Texas and this Judicial District, including (a) at least part of its past infringing activities, (b) regularly doing or soliciting business in the State of Texas, and/or (c) engaging in persistent conduct and/or deriving substantial revenue from goods and services provided to customers in the State of Texas. Moreover, Defendant has significant ties to, and presence in, the State of Texas and the Eastern District of Texas, making venue in this Judicial District both proper and convenient for this action.

## PATENTS-IN-SUIT

18.    On January 12, 2021, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 10,891,881 entitled "LIGHTING ASSEMBLY WITH LEDS AND OPTICAL ELEMENTS." A true and correct copy of the '881 Patent is available at https://patentcenter.uspto.gov/applications/16750361.

19.    On June 20, 2017, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 9,685,102 entitled "LED LIGHTING ASSEMBLY WITH UNIFORM OUTPUT INDEPENDENT OF NUMBER OF NUMBER OF ACTIVE LEDS, AND METHOD." A true and correct copy of the '102 Patent is available at https://patentcenter.uspto.gov/applications/15429320.

20.    On March 7, 2017, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 9,589,488 entitled "LED LIGHT ASSEMBLY WITH THREE-PART LENS." A true and correct copy of the '488 Patent is available at

https://patentcenter.uspto.gov/applications/14968520.

21.    On May 23, 2017, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 9,659,511 entitled "LED LIGHT ASSEMBLY HAVING THREE-PART OPTICAL ELEMENTS." A true and correct copy of the '511 Patent is available at https://patentcenter.uspto.gov/applications/15216562.

22.    Ultravision is the sole and exclusive owner of all right, title and interest in and to the '881, '102, '488, and '511 Patents (collectively, the "Patents-in-Suit"), and holds the exclusive right to take all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement action. Ultravision also has the right to recover all damages for past, present, and future infringement of the Patents-in-Suit and to seek injunctive relief as appropriate under the law.

23.    Ultravision has marked its products in accordance with the marking provisions of 35 U.S.C. § 287, for example, via at least the website http://ultravisioninternational.com, the website https://ultravisiontechnologies.com/, and/or Ultravision's products and/or packaging.

## DEFENDANT'S PRODUCTS

24.    Upon information and belief, Defendant makes, uses, offers to sell, or sells within the United States or imports into the United States the Accused Products, for example, LED lighting, area lights and/or street lamps including Defendant's Value Class Wattage Selectable Area Lights (e.g., AREAFLD5AS300UNHD840T4BZ) ("AREAFLD"); Performance Class OPTI-SELECT Area Lights; Performance Class Dual Selectable Area Lights; Superior Class Wattage Selectable Area Light Luminaires (e.g., AREAFLD4AS190HUVD850T4BZ); Eco Class Arealighting Luminaires (e.g., ECP CLASS AREA SPD 90W 830 IP66 GY); Streetlight Area Luminaires; and Streetlight Flex Luminaires (e.g., SL FLEX SM P 25W 730 RV25ST WAL, SL FLEX SM 25W 730 RV30ST).

25.    Images of Defendant's AREAFLD product are shown below[2] and provide additional context for Defendant's infringement of the Patents-in-Suit, including, for example, the '881 Patent.



a plurality of LEDs attached to the circuit board being arranged in an array of row and columns, wherein all of the LEDs attached to the circuit board are arranged in a single plane;

a circuit board





a support substrate supporting the circuit board, the support structure made of a thermally conductive material and configured to dissipate heat during operation of the LEDs



a plurality of optical elements configured to redirect light from the plurality of LEDs, each optical element being substantially the same as all other optical elements

each LED is associated with a single optical element and each optical element is associated with a single LED

configured to shape and direct light in a rectangular waveform

300W Fixture, Type IV Distribution, Mounted at 35' mounting height

each optical element comprises a convex portion at least partially overlying the associated LED

the lighting apparatus is configured so that when all of the LEDs are operating a substantially rectangular surface that is off-center relative to the lighting apparatus is illuminated with an illumination level and a uniformity

---

[2] Source for photographs: device tear down; source for Type IV Distribution chart: https://assets3.ledvanceus.com/media/resource/original/asset-13159088.

 

**The optical elements are part of an outer surface that forms an exposed surface of the lighting apparatus**

**failure of one or more of the LEDs will cause the illumination level of light impinging the substantially rectangular surface to decrease while the uniformity of light impinging the substantially rectangular surface remains substantially the same.**

 

26.    Additionally images of Defendant's AREAFLD product are shown below[3] and provide additional context for Defendant's infringement of the Patents-in-Suit, including, for example, the '102 Patent.



---

[3] Source for photographs: device tear down; source for Type IV Distribution chart: https://assets3.ledvanceus.com/media/resource/original/asset-13159088.



a plurality of light emitting diodes (LEDs);



a plurality of optical elements (six examples are shown here)

each optical element **associated with** one of the plurality of LEDs **and each LED associated with** one of the optical elements

a plurality of light emitting diodes (LEDs) - (six examples are shown here).



**300W Fixture, Type IV Distribution, Mounted at 35' mounting height**

directing light away from the plurality of LEDs toward the area, wherein directing the light comprises directing the light such that light exiting from each optical element is directed across the area



a first element

a second element

Transparent substrate with underlying circuit board and LEDs

a second element that intersects with the first element in a region between the first element and the second element



wherein the first element and the second element are shaped so that at least one surface normal of the first element intersect with at least one surface normal of the second element

a first element

a second element



a third element extending beyond the region between the first element and the second element in a direction away from the associated LED



Transparent substrate with underlying circuit board and LEDs



Transparent substrate with underlying circuit board and LEDs

a third element extending beyond the region between the first element and the second element in a direction away from the associated LED



a first element

a second element



if some of the LEDs fail to operate during directing the light away from the plurality of LEDs, the step of directing the light comprises directing the light from operative ones of the plurality of LEDs toward the area such that the light from each operative LED is directed across the area

27.    Additionally images of Defendant's AREAFLD product are shown below[4] and provide additional context for Defendant's infringement of the Patents-in-Suit, including, for example, the '488 Patent.



[4] Source for photographs: device tear down; source for Type IV Distribution chart: https://assets3.ledvanceus.com/media/resource/original/asset-13159088.



a plurality of light emitting diodes (LEDs);

a plurality of optical elements (six examples are shown here)



each optical element associated with one of the plurality of LEDs and each LED is associated with one of the optical elements

a plurality of light emitting diodes (LEDs) - (six examples are shown here).



directing light from the plurality of LEDs toward the area, wherein directing the light comprises directing the light from each LED of the plurality of LEDs through the associated optical element such that light exiting from each optical element of the plurality of optical elements is directed across all of the area



Transparent substrate with underlying circuit board and LEDs

a first element comprising a first convex-shaped surface

a second element comprising a second convex-shaped surface



Transparent substrate with underlying circuit board and LEDs

a first element comprising a first convex-shaped surface

a second element comprising a second convex-shaped surface



**a first element comprising a first convex-shaped surface**

**a second element comprising a second convex-shaped surface**

**Transparent substrate with underlying circuit board and LEDs**

**a second element comprising a second convex-shaped surface that intersects with the first convex-shaped surface at an acute angle in a region between the first element and the second element**

**a first element comprising a first convex-shaped surface**

**a second element comprising a second convex-shaped surface**

**Transparent substrate with underlying circuit board and LEDs**

**the light from the associated LED exits the associated optical element through the first and the second convex-shaped surfaces**



28.    Additionally images of Defendant's AREAFLD product are shown below[5] and provide additional context for Defendant's infringement of the Patents-in-Suit, including, for example, the '511 Patent.

---

[5] Source for photographs: device tear down; source for Type IV Distribution chart: https://assets3.ledvanceus.com/media/resource/original/asset-13159088.




**An apparatus comprising a lighting assembly**

**(front)**                                    **(back)**
**a circuit board**






a plurality of light emitting diodes (LEDs);

a circuit board



a plurality of optical elements configured to redirect light (six examples are shown here)

a plurality of optical elements, **wherein** each optical element of the plurality of optical elements is proximate an associated LED of the plurality of LEDs

each optical element of the plurality of optical elements **is separate from** other optical elements of the plurality of optical elements

each optical element of the plurality of optical elements comprises a single optical element

The plurality of LEDs (six examples are shown here).



**each optical element of the plurality of optical elements comprises a single optical element** that includes **a first portion**, **a second portion** and **a third portion**

a third portion

a first portion

Transparent substrate with underlying circuit board and LEDs

a second portion

the first portion of the optical element comprises a first curved surface

the second portion of the optical element comprising a second curved surface that intersects with the first portion of the optical element in a region between the first portion of the optical element and the second portion of the optical element



the first portion of the optical element comprises a first curved surface

the second portion of the optical element comprising a second curved surface

the second portion of the optical element comprising a second curved surface that intersects with the first portion of the optical element in a region between the first portion of the optical element and the second portion of the optical element

Transparent substrate with underlying circuit board and LEDs



wherein the first portion of the optical element and the second portion of the optical element are shaped so that at least one surface normal of the first portion of the optical element intersects with at least one surface normal of the second portion of the optical element

the first portion

the second portion



The third portion of the optical element

the first portion of the optical element comprising a first curved surface

the second portion of the optical element comprising a second curved surface

Transparent substrate with underlying circuit board and LEDs

the first and second portions of the optical element are configured so that light from the associated LED exits the associated optical element through the first and the second portions of the optical element



**wherein the third portion** of **the optical element** extends beyond **the region between the first portion of the optical element and the second portion of the optical element in a direction away from the associated LED**

a first element

a second element



**the LEDs** and **optical elements** are arranged over the circuit board **so that, during operation, light from light assembly does not create hot spots or result in dead spots on the area** **so long as some of the LEDs are functional**

## COUNT I
### (Infringement of the '881 Patent)

29.     Paragraphs 1 through 28 are incorporated by reference as if fully set forth herein.

30.     Ultravision has not licensed or otherwise authorized Defendant to make, use, offer to sell, or sell within the United States or import into the United States any products that embody the inventions of the '881 Patent.

31.     Defendant has directly infringed and continues to directly infringe one or more claims of the '881 Patent, including at least claim 1, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, and/or selling within the United States and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '881 Patent. Such products include one or more of the Accused Products, for example, Defendant's AREAFLD product.

32.     Upon information and belief, Defendant's AREAFLD product is a lighting apparatus.

33.     Upon information and belief, Defendant's AREAFLD product comprises a circuit board; a plurality of light emitting diodes (LEDs) attached to the circuit board, the LEDs being arranged in an array of row and columns, wherein all of the LEDs attached to the circuit board are arranged in a single plane; a support substrate supporting the circuit board, the support structure made of a thermally conductive material and configured to dissipate heat during operation of the LEDs; and a plurality of optical elements configured to redirect light from the plurality of LEDs, each optical element being substantially the same as all other optical elements and configured to shape and direct light in a rectangular waveform, wherein each LED is associated with a single optical element and each optical element is associated with a single LED, wherein each optical element comprises a convex portion at least partially overlying the associated LED, and wherein the optical elements are part of an outer surface that forms an

exposed surface of the lighting apparatus.

34.     Upon information and belief, Defendant's AREAFLD product is a lighting apparatus configured so that when all of the LEDs are operating a substantially rectangular surface that is off-center relative to the lighting apparatus is illuminated with an illumination level and a uniformity.

35.     Upon information and belief, failure of one or more of the LEDs in Defendant's AREAFLD product will cause the illumination level of light impinging the substantially rectangular surface to decrease while the uniformity of light impinging the substantially rectangular surface remains substantially the same.

36.     Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '881 Patent, including at least claim 1, by knowingly and intentionally inducing others, including customers, installers, and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, and/or selling within the United States and/or importing into the United States products that include infringing technology, including the Accused Products, for example, Defendant's AREAFLD product.

37.     Defendant knowingly and intentionally induces infringement of one or more claims of the '881 Patent in violation of 35 U.S.C. § 271(b), including at least claim 1, by actively encouraging others to make, use, offer to sell, and/or sell within the United States and/or import into the United States products, including one more of the Accused Products, for example, Defendant's AREAFLD product.

38.     Upon information and belief, with knowledge and intent, or with willful blindness, Defendant is encouraging and facilitating infringement of one or more claims of the '881 Patent by others, including at least claim 1. For example, upon information and belief, Defendant sells or otherwise provides products, including but not limited to Defendant's AREAFLD product, to

distributors, installers, or U.S.-based sales entities, knowing that these entities intend to make, use, offer to sell, and/or sell the products within the United States and/or import the products into the United States.

39.    At least as of the date of the filing of this Complaint, Defendant, with knowledge that these products, or the use thereof, infringe one or more claims of the '881 Patent, including at least claim 1, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '881 Patent by supplying these products to end users for use in an infringing manner.

40.    Defendant has induced and continues to induce infringement by others of one or more claims of the '881 Patent, including at least claim 1, including customers, installers, and end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '881 Patent, but while remaining willfully blind to the infringement.

41.    Ultravision has suffered damages as a result of Defendant's direct and indirect infringement of the '881 Patent in an amount to be proved at trial.

42.    Ultravision has suffered and will continue to suffer irreparable harm as a result of Defendant's infringement of the '881 Patent for which there is no adequate remedy at law unless Defendant's infringement is enjoined by this Court.

## <u>COUNT II</u>
**(Infringement of the '102 Patent)**

43.    Paragraphs 1 through 42 are incorporated by reference as if fully set forth herein.

44.    Ultravision has not licensed or otherwise authorized Defendant to make, use, offer to sell, or sell within the United States or import into the United States any products that embody the inventions of the '102 Patent.

45.    Upon information and belief, Defendant has directly infringed and continues to directly infringe one or more claims of the '102 Patent, including at least claim 1, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, and/or selling within the United States and/or importing into the United States products, at least said using said products satisfying each and every limitation of one or more claims of the '102 Patent. Such products include one or more of the Accused Products, for example, Defendant's AREAFLD product.

46.    Upon information and belief, Defendant's AREAFLD product performs a method of illuminating an area using a light assembly that includes a plurality of light emitting diodes (LEDs) and a plurality of optical elements, each optical element associated with one of the plurality of LEDs and each LED associated with one of the optical elements.

47.    Upon information and belief, the method comprises directing light away from the plurality of LEDs toward the area, wherein directing the light comprises directing the light such that light exiting from each optical element is directed across the area.

48.    Upon information and belief, each optical element of Defendant's AREAFLD product includes: a first element; a second element that intersects with the first element in a region between the first element and the second element, wherein the first element and the second element are shaped so that at least one surface normal of the first element intersect with at least one surface normal of the second element; and a third element extending beyond the region between the first element and the second element in a direction away from the associated LED.

49.    Upon information and belief, if some of the LEDs of Defendant's AREAFLD product fail to operate during directing the light away from the plurality of LEDs, the step of directing the light comprises directing the light from operative ones of the plurality of LEDs toward the area such that the light from each operative LED is directed across the area.

50.     Upon information and belief, one or more of the Accused Products, for example, Defendant's AREAFLD product, has no substantial non-infringing uses.

51.     Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '102 Patent, including at least claim 1, by knowingly and intentionally inducing others, including customers, installers, and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, and/or selling within the United States and/or importing into the United States products that include infringing technology, including the Accused Products, for example, Defendant's AREAFLD product.

52.     Defendant knowingly and intentionally induces infringement of one or more claims of the '102 Patent in violation of 35 U.S.C. § 271(b), including at least claim 1, by actively encouraging others to make, use, offer to sell, and/or sell within the United States and/or import into the United States products, including one more of the Accused Products, for example, Defendant's AREAFLD product.

53.     Upon information and belief, with knowledge and intent, or with willful blindness, Defendant is encouraging and facilitating infringement of one or more claims of the '102 Patent by others, including at least claim 1. For example, upon information and belief, Defendant sells or otherwise provides products, including but not limited to Defendant's AREAFLD product, to distributors, installers, or U.S.-based sales entities, knowing that these entities intend to make, use, offer to sell, and/or sell the products within the United States and/or import the products into the United States.

54.     At least as of the date of the filing of this Complaint, Defendant, with knowledge that these products, or the use thereof, infringe one or more claims of the '102 Patent, including at least claim 1, knowingly and intentionally induced, and continues to knowingly and

intentionally induce, direct infringement of the '102 Patent by supplying these products to end users for use in an infringing manner.

55.    Defendant has induced and continues to induce infringement by others of one or more claims of the '102 Patent, including at least claim 1, including customers, installers, and end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '102 Patent, but while remaining willfully blind to the infringement.

56.    Ultravision has suffered damages as a result of Defendant's direct and indirect infringement of the '102 Patent in an amount to be proved at trial.

57.    Ultravision has suffered and will continue to suffer irreparable harm as a result of Defendant's infringement of the '102 Patent for which there is no adequate remedy at law unless Defendant's infringement is enjoined by this Court.

## COUNT III
### (Infringement of the '488 Patent)

58.    Paragraphs 1 through 57 are incorporated by reference as if fully set forth herein.

59.    Ultravision has not licensed or otherwise authorized Defendant to make, use, offer to sell, or sell within the United States or import into the United States any products that embody the inventions of the '488 Patent.

60.    Upon information and belief, Defendant has directly infringed and continues to directly infringe one or more claims of the '488 Patent, including at least claim 1, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, and/or selling within the United States and/or importing into the United States products, at least said using said products satisfying each and every limitation of one or more claims of the '488 Patent. Such products include one or more of the Accused Products, for example, Defendant's AREAFLD product.

61.     Upon information and belief, Defendant's AREAFLD product performs a method of illuminating an area using an apparatus comprising a light assembly that includes a plurality of light emitting diodes (LEDs) and a plurality of optical elements, each optical element associated with one of the plurality of LEDs and each LED is associated with one of the optical elements.

62.     Upon information and belief, the method comprises directing light from the plurality of LEDs toward the area, wherein directing the light comprises directing the light from each LED of the plurality of LEDs through the associated optical element such that light exiting from each optical element of the plurality of optical elements is directed across all of the area.

63.     Upon information and belief, each optical element of the plurality of optical elements in Defendant's AREAFLD product includes a first element comprising a first convex-shaped surface, a second element comprising a second convex-shaped surface that intersects with the first convex-shaped surface at an acute angle in a region between the first element and the second element, wherein the light from the associated LED exits the associated optical element through the first and the second convex-shaped surfaces, and a third element extending beyond the first convex-shaped element and the second convex-shaped element in a direction away from the associated LED.

64.     Upon information and belief, one or more of the Accused Products, for example, Defendant's AREAFLD product, has no substantial non-infringing uses.

65.     Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '488 Patent, including at least claim 1, by knowingly and intentionally inducing others, including customers, installers, and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, and/or selling within the United

States and/or importing into the United States products that include infringing technology, including one or more of the Accused Products, for example, Defendant's AREAFLD.

66.     Defendant knowingly and intentionally induces infringement of one or more claims of the '488 Patent in violation of 35 U.S.C. § 271(b), including at least claim 1, by actively encouraging others to make, use, offer to sell, and/or sell within the United States and/or import into the United States products, including one more of the Accused Products, for example, Defendant's AREAFLD.

67.     Upon information and belief, with knowledge and intent, or with willful blindness, Defendant is encouraging and facilitating infringement of one or more claims of the '488 Patent by others, including at least claim 1. For example, upon information and belief, Defendant sells or otherwise provides products, including but not limited to Defendant's AREAFLD, to distributors, installers, or U.S.-based sales entities, knowing that these entities intend to make, use, offer to sell, and/or sell the products within the United States and/or import the products into the United States.

68.     At least as of the date of the filing of this Complaint, Defendant, with knowledge that these products, or the use thereof, infringe one or more claims of the '488 Patent, including at least claim 1, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '488 Patent by supplying these products to end users for use in an infringing manner.

69.     Defendant has induced and continues to induce infringement by others of one or more claims of the '488 Patent, including at least claim 1, including customers, installers, and end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '488 Patent, but while remaining willfully blind to the infringement.

70.    Ultravision has suffered damages as a result of Defendant's direct and indirect infringement of the '488 Patent in an amount to be proved at trial.

71.    Ultravision has suffered and will continue to suffer irreparable harm as a result of Defendant's infringement of the '488 Patent for which there is no adequate remedy at law unless Defendant's infringement is enjoined by this Court.

## COUNT IV
### (Infringement of the '511 Patent)

72.    Paragraphs 1 through 71 are incorporated by reference as if fully set forth herein.

73.    Ultravision has not licensed or otherwise authorized Defendant to make, use, offer to sell, or sell within the United States or import into the United States any products that embody the inventions of the '511 Patent.

74.    Defendant has directly infringed and continues to directly infringe one or more claims of the '511 Patent, including at least claim 1, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, and/or selling within the United States and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '511 Patent. Such products include one or more of the Accused Products, for example, Defendant's AREAFLD product.

75.    Upon information and belief, Defendant's AREAFLD product is an apparatus comprising a lighting assembly for illumination of an area.

76.    Upon information and belief, the lighting assembly comprises a circuit board; a plurality of light emitting diodes (LEDs) overlying the circuit board; and a plurality of optical elements, wherein each optical element of the plurality of optical elements is proximate an associated LED of the plurality of LEDs, wherein each optical element of the plurality of optical elements is separate from other optical elements of the plurality of optical elements, and wherein

each optical element of the plurality of optical elements comprises a single optical element that includes a first portion, a second portion and a third portion.

77.    Upon information and belief, the first portion of the optical element comprises a first curved surface.

78.    Upon information and belief, the second portion of the optical element comprising a second curved surface that intersects with the first portion of the optical element in a region between the first portion of the optical element and the second portion of the optical element, wherein the first portion of the optical element and the second portion of the optical element are shaped so that at least one surface normal of the first portion of the optical element intersects with at least one surface normal of the second portion of the optical element and wherein the first and second portions of the optical element are configured so that light from the associated LED exits the associated optical element through the first and the second portions of the optical element.

79.    Upon information and belief, the third portion of the optical element extends beyond the region between the first portion of the optical element and the second portion of the optical element in a direction away from the associated LED.

80.    Upon information and belief, the LEDs and optical elements are arranged over the circuit board so that, during operation, light from light assembly does not create hot spots or result in dead spots on the area so long as some of the LEDs are functional.

81.    Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '511 Patent, including at least claim 1, by knowingly and intentionally inducing others, including customers, installers, and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, and/or selling within the United States and/or importing into the United States products that include infringing technology, including the Accused Products, for example, Defendant's AREAFLD product.

82.    Defendant knowingly and intentionally induces infringement of one or more claims of the '511 Patent in violation of 35 U.S.C. § 271(b), including at least claim 1, by actively encouraging others to make, use, offer to sell, and/or sell within the United States and/or import into the United States products, including one more of the Accused Products, for example, Defendant's AREAFLD product.

83.    Upon information and belief, with knowledge and intent, or with willful blindness, Defendant is encouraging and facilitating infringement of one or more claims of the '511 Patent by others, including at least claim 1. For example, upon information and belief, Defendant sells or otherwise provides products, including but not limited to Defendant's AREAFLD product, to distributors, installers, or U.S.-based sales entities, knowing that these entities intend to make, use, offer to sell, and/or sell the products within the United States and/or import the products into the United States.

84.    At least as of the date of the filing of this Complaint, Defendant, with knowledge that these products, or the use thereof, infringe one or more claims of the '511 Patent, including at least claim 1, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '511 Patent by supplying these products to end users for use in an infringing manner.

85.    Defendant has induced and continues to induce infringement by others of one or more claims of the '511 Patent, including at least claim 1, including customers, installers, and end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '511 Patent, but while remaining willfully blind to the infringement.

86.    Ultravision has suffered damages as a result of Defendant's direct and indirect infringement of the '511 Patent in an amount to be proved at trial.

87.     Ultravision has suffered and will continue to suffer irreparable harm as a result of Defendant's infringement of the '511 Patent for which there is no adequate remedy at law unless Defendant's infringement is enjoined by this Court.

## DEMAND FOR JURY TRIAL

Ultravision hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Ultravision prays for relief against Defendant as follows:

a.     entry of judgment declaring that Defendant has directly and/or indirectly infringed one or more claims of each of the Patents-in-Suit;

b.     an order pursuant to 35 U.S.C. § 283 permanently enjoining Defendant, its officers, agents, servants, employees, attorneys, instrumentalities and those persons in privity, active concert or participation with it, from further acts of direct and/or indirect infringement of the Patents-in-Suit including the manufacture, sale, offer for sale, importation and use of the infringing products;

c.     a full accounting for and an award of damages to Ultravision for Defendant's infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, including enhanced damages pursuant to 35 U.S.C. § 284, together with pre- and post-judgment interest;

d.     entry of judgment declaring that this case is exceptional and awarding Ultravision its costs and reasonable attorney fees under 35 U.S.C. § 285; and

e.     such other and further relief as the Court deems just and proper.

Dated:  August 26, 2025

Respectfully submitted,

*/s/ Jeffrey R. Bragalone* __
    Jeffrey R. Bragalone (lead attorney)
    Texas Bar No. 02855775
    E-mail: jbragalone@bosfirm.com
    Terry A. Saad
    Texas Bar No. 24066015
    E-mail: tsaad@bosfirm.com
    Marcus Benavides
    Texas Bar No. 24035574
    E-mail: mbenavides@bosfirm.com
    Brandon V. Zuniga
    Texas Bar no. 24088720
    E-mail: bzuniga@bosfirm.com
    Mark M.R. Douglass
    Texas Bar No. 24131184
    E-mail: mdouglass@bosfirm.com
**BRAGALONE OLEJKO SAAD PC**
901 Main Street
Suite 3800
Dallas, Texas 75202
Telephone:  (214) 785-6670
Facsimile:   (214) 785-6680

**ATTORNEYS FOR PLAINTIFF
ULTRAVISION TECHNOLOGIES,
LLC**